On behalf of the Appellant, Ms. Rosa Tumiali, and on behalf of the Appellate, Mr. David Oppenheim. Is it Ms. Tumiali? Tumiali. Tumiali, you may proceed. May it please the Court, Counsel. My name is Rosa Tumiali, and I represent State Farm, the citation respondent in this appeal. The only issue presented this morning for this Court's consideration is whether State Farm timely filed or was diligent in filing its 2-1401 petition. The trial court erred because it found that because State Farm denied coverage to the original tender that was made to it by the insured in the underlying case, that the fact that it knew about the case from basically its filing, that State Farm could never be diligent in filing a 2-1401 petition. Can you answer a threshold question as it may bear on the due diligence? When did State Farm get served with a copy of the amended complaint? It was served with a, the amended complaint was tendered to it on December 10th of 2010, six days before the final approval hearing was scheduled before the trial. Is it in the record definitively in the record when State Farm received the amended complaint? Yes, Judge, it should be definitively in the record because the filing of the amended complaint is of record in the trial court. December 10th, 2010 is the record? December 10th, 2010 is the date. What may be ambiguous in the trial court record of this case, Judge, there is some overlap because the facts that gave rise to State Farm's petition were developed as a byproduct to its actions in the declaratory action where it was taking discovery on the reasonableness question. And so to answer your question, honestly, Your Honor, I must advise you that it's possible that the actual tender letter is probably part of the declaratory judgment record, but it was made, certainly referenced in the petition. I'm sorry. Finish what you were going to say. But the affidavit that supported the petition made clear that the first time State Farm learned of the facts that supported its petition, that was November 2011, and it filed its petition December 2011, about 30 days, maybe less than 30 days, for learning of those facts, and that is the measure that should have been applied to determining the diligence. Why wouldn't you learn of the possibility that you have some possible liability or duty to defend once you received a copy of the amended complaint? Well, Judge, the question is not really State Farm's duty to defend. For purposes of the 1401 petition, it was really its diligence. The duty to defend question is before the declaratory court. It has no propriety, no relevance in the class action trial court. This 1401 petition is the only mechanism that a party like State Farm has to challenge deficiencies to the actual judgment. Any coverage issues can't be raised in the class action trial court and were not raised in the class action trial court. Was the judgment rendered before or after December 10? The final judgment, Judge, was rendered December 16, 2010, but I would add that December 10, 2010 correspondence letter to State Farm did not advise it that the case had settled, that there was a class final approval hearing. All it did was tender the second amended complaint, which begs the question of why there's need to settle a case that's or amend a complaint in a case that's settled. Is there not some argument of whether or not you either have the right to intervene or have any standing in this case? Well, there's the GM sign does try to raise that, Judge, but that question is settled by Hurlburt, which said that 1401, there's no prerequisite to filing an intervention to pursue standing. Instead, Hurlburt examined and set forth those exceptions when a non-party can pursue a 1401. And isn't one of those that you have some skin in the game and that you might be placed at some detrimental position if there's a judgment entered? There are three disjunctive prerequisites to 1401 relief for a non-party. That's privity, which Your Honor referenced in the skin in the game, the injury to the party, or the competency to release the error. State Farm satisfies, if not all three of those, at least the last two. The last two of which were not even challenged by GM sign. And why wouldn't those be brought forth, or why wouldn't you get some sort of constructive, if not actual notice, when you were given the amended complaint on 121010? The amended class action complaint, Judge, did not attach a copy of the settlement agreement. It was just an amended complaint that State Farm believes was drafted to better the position in the soon-to-be-filed declaratory action to argue against and around an exclusion that they've implied. So am I asking you questions about diligence relative to intervention or diligence relative to a 1401 motion? Well, Judge, the point here is that the trial court found that State Farm was not diligent because it knew about the case and it didn't take any action to defend its insurer. Yes, well, you can affirm the trial court on any basis that's contained in the record, and we may find out that his rationale was wrong, but the decision was correct based upon the record. Would you agree that this is de novo review or not? Yes, it's de novo review, Judge. Therefore, we can make a determination that, based upon the record, maybe you weren't diligent or maybe your client wasn't diligent. Well, Judge, State Farm had no knowledge of the facts that supported its petition, all of which are outlined in its petition, until it received the discovery responses from GMSign relating to the reasonableness question. And as soon as it learned about those, granted, it was just the preliminary responses, but those put State Farm on notice of deficiencies to the judgment. The class action representative was not included in the stipulated class action period. Just to clarify again, did you say that the amended complaint did not reference the consent judgment naming State Farm? No, it did not, Judge. It was just an amended complaint of the TCPA, the conversion count, and the Illinois Consumer Fraud Act count, and all it did was change the manner in which those allegations were incorporated into the other counts. Was that a tender, though? Excuse me? Was that a tender? Was the amended complaint sent asking for State Farm to defend at that point? Well, there was no request for that. It was just a copy of the complaint sent to State Farm saying, here's the amended complaint filed in the above-referenced case, the above-referenced case being the underlying TCPA class action case. Was that a plaintiff's attorney or your alleged client? Mr. Shane's defense attorney, at the instruction of plaintiff's attorney, sent that complaint to State Farm. Wouldn't that sort of be the functional equivalent of a tender? Well, there's probably no question that it was a tender, Judge. The only question, though, is was State Farm on notice of the deficiencies of the judgment that was entered six days later, at any time earlier than when it learned of them, which was November 2011? And the answer is it was not, and the record clearly reflects that State Farm did not act negligently in pursuing the deficiencies of the judgment that it discovered for the first time in November 2011. I guess what the trial court got at was at that point in time when they received this amended complaint with two counts that could have fallen clearly within coverage, why didn't it get involved then? I think that's what the trial court was getting at. Why didn't State Farm get involved on December 10th, before this judgment was even entered? Well, it's questionable whether State Farm could have gotten involved before the judgment was entered, which would have been six days later, because State Farm did respond to the tender in its usual course. It responds within 30 days, and it did respond in January, standing on its original denial. However, what the trial court did in the trial court's analysis was because State Farm chose to deny coverage and because it stood on that denial, it's not diligent. That's not the proper measure. The proper measure is when did the party seeking 2-1401 relief learn of the fact supporting that petition? So you're suggesting the trial court set a convoluted stop hole with due diligence? Is that sort of what you're saying? Yes. The two concepts were conflated. They're actually separate. State Farm's coverage obligations are before the declaratory judgment court in Linn County. That determination is separate and really just deals with State Farm's contractual obligations under its insurance contracts vis-a-vis its insured. But the 1401 petition is the only mechanism that's available to a party to challenge deficiencies in that judgment. State Farm did not learn of those deficiencies and had no reason to look for those deficiencies until November 2011, and it filed its petition within 30 days. If that's not diligence ---- And what happened again in November 20th or 2011? The discovery responses that State Farm served for purposes of pursuing the reasonableness evidence to support or to eventually proceed to a reasonableness hearing in the declaratory action, that's when those were served because Judge Hall in the declaratory case had made a ruling on the dispositive motion relating to the application of the TCPA exclusion. So once that took care of the duty to defend issue in the declaratory action, at least on an interlocutory basis, and then the case proceeded to the indemnity stage. One of the issues raised by State Farm was the reasonableness of the stipulated settlement under the Guillen case. That required GM sign to meet its burden of proof that the decision to settle and the amount of settlement was reasonable by the standard of the reasonably prudent uninsured. State Farm served discovery ---- I'm sorry, Judge. Your request, appropriately, doesn't ask for remand for another hearing with an appropriate determination based upon the perspective that you're relating to us presently. It's ambiguous. You have boilerplate here that might cover such a thing, but is that what you are asking us as a form of relief? One of the forms of relief, Judge, is that the case be remanded for a hearing on the merits of the 1401 petition because State Farm believes it was diligent in filing its petition within 30 days of learning of the facts that support it. What about the, let's assume diligence for a second, and that's what the trial court ruled on, but you did argue in the trial courts the merits. We did. Well, you did go into that. The trial court chose not to rule on it. Your merits are basically two points that you've raised as far as the meritorious defenses, correct? Well, I think there were three, but the inadequacy of the class representative that was not included in the class period that was stipulated to and drafted by class action counsel. The argument was that that could be fixed under pro tonque, but that would not apply. Pro tonque is for trial court errors. The trial court did not err in that respect. That was the stipulation period that was presented to and it simply entered what was requested of it. But the important part is there was nobody before the trial court on December 16, 2010, to point that deficiency out, and that is a significant deficiency. Another deficiency relates to the notice sent to the class. It was admitted in oral argument before Judge Hoffman that the notice that was sent was the best notice at the time, and that's an important qualification because it was admitted in oral argument that there was better notice that could be had now, that the time had passed and they were able to find actual addresses and names. Is that really the standard, better and best? We've got broad discretion with the trial court and notice in a class action under 806. Both parties agreed to the fax notice. The trial court agreed to the fax notice. It happened about two years after the last faxes were sent to those same places that created the case. How is that an abuse of discretion when we're complaining about better versus best? Because of the context in which that class notice was sent, there was a race that was a self-imposed exigency by class counsel to have the settlement be in place, be in force, and be approved before State Farm filed its D.J. There's an e-mail to that effect by class counsel saying that they needed to get this done by a certain period. So what happened was there were mistakes made. Corners were cut. So the class action period did not even include the name class representative. We had the notice that the best notice they could send was a recreated list in 2010 of what the list might have looked like in 2007 when the faxes went out. There was no confirmation that that list was the same people that received it in 2007. But yet, if a little bit of time had been allowed to pass and there was no need to rush, then maybe they would have been able to get the actual notice that they say they now have. You seem to be laying it at the feet of counsel. We have to lay it at the feet of the court. We're talking about abuse of discretion by the trial court, not by counsel. The trial court went along with this. So you're saying the trial court, the court, the judge abused his discretion in allowing this type of notice. Yes, Judge, under these circumstances. Because if there was a party before him on December 16, 2010, to relay the context within which this notice was sent, that may have prevented entry of the judgment. They may have required additional notice, supplemental notice, something that would have comported with the notions of due process and what is required for class notice. But there wasn't anybody in that position. Because Mr. Shane had stipulated to this agreement, class counsel wanted this agreement and needed it in place sooner rather than later so that they could file their D.J. and then have State Farm on the defensive with respect to an estoppel finding that they are now trying to argue prevents them from filing a 2-1401 petition at any time. Because if 30 days within notice of facts to support the judgment is not diligent, then nothing can be diligent. And the Hurlburt case is really rendered meaningless because that case, State Farm is basically in the same position as the insurer in that case. And the court found that the insurer in that case had standing because it was injured by the judgment. They were increasing the judgment from $100,000 to $500,000. The insurer comes in and is able to, as a non-party, assert the 2-1401 petition. Now, this case asks this court to determine what does it mean to be a Hurlburt petitioner. Well, you have to be diligent. State Farm was diligent. State Farm learned of these facts in a collateral proceeding, admittedly. But it learned of them. And as soon as it learned of them, it proceeded as efficiently as it could. We did argue the merits before the trial court. We believe that there would be sufficient evidence to at least grant the petition provisionally and remand for further proceedings for additional evidence to be taken if, in fact, the notice could have been remedied. But the fact of the matter is that the only question is, was State Farm diligent? It was. And the petition is entitled to have been reviewed on the merits. And even the trial court acknowledged that the deficiencies, which are dismissed as nitpicks, were sufficient and were interesting to the court. The court did comment then that they were significant. In one of the pleadings or somewhere, I saw that somebody was arguing that the – you're talking about this class member being an actual member of the certified class. Weren't there facts sent out in 08 that clearly were sent to this party? I guess that's what appeared to be an argument. I guess that's the argument, Judge, but I'm not convinced that that proof was actually presented in a sufficient manner. And, again, that would be something that would merit a remand to at least confirm that all of the requirements for class certification on December 16, 2010, were satisfied. There was nobody before the court to present these issues, which are significant. Even the trial court noticed that. The trial court spent a significant amount of time questioning counsel about the notice and why was it noticed on a certain way or why was it done this way. Well, it was done this way because they were in a rush. They had the self-imposed exigency so that they could get to the courthouse with their declaratory complaint before State Farm. Thank you, Judge. Mr. Oppenheim, you may proceed. May it please the court, this is a case about an insurer that thought it had a good coverage of defense, went and told its insurer to go off on its own, litigate its case as it saw fit, and then found out later that its coverage of defense wasn't so good. Well, part of that's because the original tender was all TCPA claims, which are excluded in the insurance policy. Actually, Your Honor, the original tender had the same three claims as the amended complaint. I was mistaken on that. I thought it would be the original tender only had, every count had TCPA claims on it. That's not, yeah, no, that is not the case. The original tender had the same counts, but the counts were altered such that references to the TCPA were removed from the amended complaint relative to the third and fourth count. So you're correct as far as you go, but you don't go all the way. That may be true. I know there's the same, the counts were alleged. The thing is that they were amended to the extent that there were some things in the first count that were included in the first count that weren't included in the first count of the amended complaint, or I should say the counts of the amended complaint. I think one of the amendments was there was a sloppy incorporation by reference where each count said we incorporate the previous paragraphs. And obviously, apart from violating the civil practice rules, since you can't have multiple claims in one count, I think that the amended complaint did clarify that. Counsel, as long as we're talking about the amended complaint, opposing counsel alluded to or represented that the amended complaint did not contain any reference to the consent judgment in which State Farm was mentioned. Is that correct? Right. The judgment happened after the amended complaint was filed. The amended complaint was simply retender saying, okay, this is the up-to-date pleading. Do you want to come into this case now? And the answer remained no. But the settlement agreement was filed 10-5. There was a preliminary approval on 10-7. And then on 11-18, the amended complaint was filed, tendered in December. So we actually had a settlement which was tentatively approved, and that was never conveyed to State Farm, correct? That's correct. Okay. Yeah, I mean, the chronology is that there was an original tender in September. The settlement, as Your Honor mentioned, initiated in October. The amended complaint came in in December, and the judgment was entered December 16th. One other date I think that is key to this appeal, as opposed to some of the issues that may be coming up to this court when and if the coverage case is appealed, is the fact that the declaratory complaint in the coverage case was filed on February 28th of 2011, and that attached the judgment order entered by the trial court in this case on December 16th. So for State Farm to stand up and say that it didn't understand the basis for its challenge to the approval of the settlement until November is bizarre, because they had the judgment order. Obviously, it's a matter of public record as of December 16th, 2010, but they actually had it as an exhibit to a pleading against them in the declaratory action in February of 2011. And that had the class beginning on 97, correct, and not 96? Yeah, it has the Scrivener's Error on it. That was apparent from the face of the judgment. Likewise, it's apparent from the face of the judgment order what class notice plan was approved by the trial court. And from what I can tell, those are really the only two substantive complaints raised by State Farm in this 1401 petition, and both of them were well known to them at least actual notice as of February 2011. They fight the coverage case. They get an adverse ruling in the coverage case in November 2011, and then finally they try and come in and reopen this judgment in the tail end of December 2011. Counsel, on that issue, other counsel or opposing counsel has alluded to the fact that she believes the trial court in making its ruling on the 2-1401 petition sort of conflated or confused the stopper with due diligence. I don't think that's true. I think that the analysis that the trial court employed was the right analysis for determining whether a party seeking 1401 relief and a party such as State Farm that would need to intervene to do so did so within a reasonable amount of time. What about the argument that the trial court is saying took the position, well, it was obvious you had a duty to defend and you didn't, so therefore automatically there's no due diligence in coming in in the 2-1401. Doesn't that sound like a stopper when you say initially you're barred forever? I don't think that's what the trial court said. I think the trial court said essentially what the First District Court of Appeals said in the X data case, which is that, look, you were tendered the complaint. You were given an opportunity to be here. We have a procedure in the state where an insurer can defend an insurer under full reservation rights and fight about the coverage issues simultaneously or later. They could have done that. They didn't do it, and so they made their bed, and now they have to lie on it. And I think that that's a perfectly reasonable way to look at it. The only overlap between, and I agree that it's similar considerations that go into an insurer-estoppel analysis in a coverage case, where the overlap is is I think that it was correct to measure State Farm's potential for involvement in this case from the time they were originally tendered the complaint. The 1401 motion, did it contain any mention of a desire to defend the defendant? I don't believe so, no, Your Honor. Then why did you mention that the trial judge in its finding that there was lack of diligence referenced that aspect when apparently that aspect from what you just answered was immaterial? Well, I think... In other words, the 1401 relates to issues that don't relate to the duty to defend, and therefore why talking about the duty to defend should be the benchmark by which time is measured seems to be inappropriate or inaccurate? I apologize if I was unclear. I think that the benchmark by which time should be measured is when the insurer has tendered the defense, tendered the lawsuit, and presented an opportunity to participate. And that happened at the beginning of this lawsuit. Well, does that then mean that you think that insurance companies should be prescient because they should know of all the things that might happen, that might not happen but might happen, and make a determination based upon what might happen as opposed to what is happening? I think that's right. I mean, I think that there has been a clear public policy in cases, admittedly largely estoppel cases like Elko, that try and present incentives for insurers to come in and defend their insurers, whether under a reservation of rights or not, in any circumstance where ultimately the insurer may be on the hook. Well, when they came in and argued, were they coming in on behalf of the defendant relative to arguing what was a proper settlement or not, or were they covering their own butts? I think it was probably the latter. In fact, there was one of the things that the trial judge held was, you're raising these issues that ostensibly would be for the class member's benefits, but really you're here for State Farm. And I think that that's another problem with this procedural posture. I mean, this court held in the Wholesale Life case that the insurer has a protection for circumstances where they decide not to defend, the parties get together and make a settlement, and somebody comes to the insurer for payment. There is a safeguard there where the plaintiff has to prove that the settlement was reasonable in the coverage case before they can recover. And that's going on, in fact. Well, how would what they did be deemed so unreasonably different than if they had, quote, unquote, had the lowest person on the totem pole come in and watch the case as it went down, and then when they received a copy of the settlement agreement decided that maybe they should get involved because now it is their own pocketbook as opposed to Mr. Shane's that's involved? And I think that if they had tried that, and I assume Your Honor is positing intervening prior to final judgment being entered, and I think that's been done before. Certainly you don't have a circumstance where somebody sat on their rights for months, then fought the coverage issues, realized, oh, wait, now I may be on the hook. Now let's look at this, which is really what we're doing. I'm suggesting intervention. I'm suggesting having a fly on the wall, an observer in the gallery, having someone go over and look at the file on a weekly or a monthly basis to see what the status of the file is. I think that that would be something that would be a very good business practice for insurers to get into. There's certainly nothing stopping them from doing it, and I think if they had done it here, they wouldn't be in a position of trying to intervene into and contest the judgment a year after it was entered. Are you arguing also that they're not diligent in bringing the petition? You're saying that they were tendered, the judgment order, which notice of the notice plan and all that in February of 2011. Of course, the petition was a file until, what was it, November? When was it 2-14-01 filed? December of 2011. December of 2011. Is that diligent or not? I think that's not diligent. Is it reasonable or unreasonable for an insurance company to wait until it's determined whether they have coverage or not? Because you can file the 2-14-01. It's a huge waste of judicial resources to go to a hearing on that and then later find out you're not even in the ballpark, you're not even in the game. Or in the ballpark. Or in the game, whatever, somewhere, the planet, wherever. Again, I think that the way our system is set up is that if the insurer wants to contest issues, wants to participate in an underlying case, they're given the opportunity to do so simultaneous to contesting coverage issues. Well, then you seem to be saying, though, and what you say has some superficial appeal, and that's probably the safest course, right? Right. But then you're saying then automatically in every case, no matter what, the allegations of the complaint would be, it would be prudent for the insurance company to always come into the case under reservation of rights, right? That that's what they should do in every single case? Because that's the safest course? It's certainly the safest course, Your Honor. And again, I think that the way that the options are set up, they can always defend unconditionally, not defend at all, or come in under a reservation. And what the Supreme Court has said in various contexts is, boys, if you don't come in at all, you're on your own, and you are stuck with what happens in the underlying case. And I think that... Then you're also stuck that the trial judge may decide you didn't exercise due diligence. Well, the 1401 mechanism brought by an insurance company who's a non-party to an underlying case and didn't participate in it is, I mean, it's just an extension of what I said, in that if they wanted to have an active role in crafting a settlement, certainly, or even coming in and objecting to a settlement, there's a timely process to do that. And I think that if the insurer wants to raise these issues, they have an obligation to do so in that timely fashion. Was Herbert wrongly decided then, based upon what you just said? I mean, I believe it was. I believe that this sort of timeliness construct is the right one. It should be measured when a complaint is tendered to an insurance company and the insurance company gets to make its business decision, because that's what the business is that it's in. But even if the court were to agree with Herbert and agree with the departure from cases like NRAJD, Herbert involved a key distinction. Herbert involved an actual attempt by the insurer to intervene in the case and become a party in order to raise these issues. State Farm here has disavowed any attempt to intervene, and I'm assuming they've done so strategically as a way to get away from the abuse of discretion standard and the timeliness measurement with respect to intervention. But I don't think Herbert, because they're not an intervener, because they are not a spurned intervener up here asking for this court to reverse an order denying them intervention, I don't think that Herbert helps them. Thank you, Your Honor. Ms. Toomey-Allen, rebuttal argument. Thank you, Your Honors. This panel just saw a preview of really what this case is about. This is an attempt by class action counsel to take the estoppel blanket and throw it over everything. Estoppel has no basis, no application here. Timeliness, if accepted, then Herbert means nothing, and nobody would ever be timely under a 1401 petition if they follow within 30 days of the knowledge of the facts giving rise to this petition. And this is what's very important, because a due diligence inquiry here has broader implications beyond the TCPA context. This case arose in a class action TCPA case, which the opposing counsel was a prolific player in that field. So they are trying to protect their turf. They didn't want anyone to examine these types of settlements in the stipulated context in the underlying case. But what can't be escaped here is that Herbert said parties like State Farm, non-parties, who are competent to release an heir, which State Farm is, and who are injured by the judgment, which State Farm is, and who are privy to the case, which State Farm is. State Farm is named as a citation respondent, but that citation was never served. State Farm discovered that citation when it retrieved a full copy of the court file during discovery that was undertaken. Did State Farm get the judgment order in February of 2011? No, Judge, the case was filed in February. State Farm was not served until March. But even if we were to accept that State Farm, and I will tell you that the complaint that State Farm received or was served with in March, only attached to it a copy of the amended TCPA class action complaint and the final judgment order. There was no settlement agreement that was attached to that complaint. That settlement agreement wasn't tendered until later in discovery. But even if we were to accept that State Farm was on notice at that point in March of 2011,  still, it filed its petition within the same calendar year, months later, by December 2011, at which time it had developed additional facts to support its petition. So while State Farm takes the position that it really was not on notice of the actual deficiencies of the judgment and the context within which that judgment was entered. And I would remind you, too, that we've been talking a lot about State Farm's duty to defend, and maybe State Farm is using hindsight, which is what Judge Hopkins said. State Farm's coming in here, presumably on the behalf of counsels. Judge Hoffman did not accept that. He understood the argument. He did not believe it, though. He made that clear in his comments. But the reasonableness question in the declaratory action really deals with the insured's state of mind and its decision, or his decision, to enter into this agreement. That decision is separate from the actual execution of that agreement, which gave rise to this judgment, the deficiencies of which are the subject of the 1401 petition. That is completely separate. And this is the only venue in which that deficiency or those deficiencies can be raised and adjudicated. So the argument that because State Farm has the ability to challenge the reasonableness of the settlement and get relief that way somehow mitigates against finding due diligence here is really incorrect, because there is no other venue where the class action protocols can be challenged and protected and compliance with which insured, because the declaratory court is certainly not the venue for that to be raised, and they have no jurisdiction over that. The only court that can do that is the class action trial court. That would be Judge Hoffman. Was there a fax sent on 9707? One of these blast faxes, was there one sent on 9707? That's the date that they say that the class begins. Right. Based on the spreadsheets that we have, we believe that that's when they started, yes. I thought the complaint said 9607 and the amended complaint. Right. GM sign, the main class plaintiff, received a fax the day before the class action period began. So they are outside the class period. What about the discovery? I thought the discovery had a number of different dates as to when the faxes were sent. There were several dates where the fax blasts were sent on behalf of Mr. Shane. Are you saying that one of those dates was 9707? Yes. Did anybody file a class action based upon the notices sent out regarding the class action? I'm sorry, I don't understand. Do you mean challenging the sufficiency of notice? The validity. I'm sorry? They sent out a fax to tell people that they were being done by a fax. Correct. It's kind of like the hair of the dog that bit you, I think. Right. The fax notice then is itself maybe a TCPA violation to settle a TCPA case. Your Honor, very briefly, the only issue before this Court is diligence. Herbert made a statement, the Court made a statement in this case, where it said that certain non-parties have the ability to assert these challenges. If State Farm is not allowed to assert that challenge here because its actions are not deemed diligent, then no party in this position would be diligent. And State Farm requests that the judgment of the trial court be reversed and that this case at the very least be remanded for evidentiary hearing on the merits of State Farm's petition. Thank you. Thank the attorneys for their arguments. The case will be taken under advisement.